# UNITED STATES DISTRICT COURT
## IN THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MICHAEL D. POE, RICKY R. HUGGINS, PATRICK SCHEXNIDER & all others similarly situated (individually and on behalf of United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States of America AFL-CIO Local 198 Health and Welfare Plan)** | § § § § § § § § § § | CIVIL ACTION NO: 3:18-cv-00667 |
| *Plaintiffs* | § § | DISTRICT JUDGE: |
| **vs.** | § § § | |
| **UNITED ASSOCIATION OF JOURNEYMAN AND APPRENTICES OF THE PLUMPING AND PIPEFITTING INDUSTRY OF THE UNITED STATES OF AMERICA AFL-CIO LOCAL 198 HEALTH AND WELFARE FUND, LOCAL 198 HEALTH AND WELFARE FUND BOARD OF TRUSTEES, LOUIS L. ROBEIN III, MARIA C. CANGEMI, and ROBEIN, URANN, SPENCER, PICARD & CANGEMI, APLC** | § § § § § § § § § § § § § § § § § | MAGISTRATE JUDGE: |
| *Defendants* | § § § § § § § | **JURY DEMAND HEREIN** |

*{Remainder of Page Intentionally Left Blank}*

**PLAINTIFFS' ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF**

NOW COME Plaintiffs, **MICHAEL D. POE, RICKY R. HUGGINS, PATRICK SCHEXNIDER, and all others similarly situated (individually and on behalf of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States of America AFL-CIO Local 198 Health and Welfare Plan)**, by and through their attorney **JAMES E. SUDDUTH, III**, and for their Complaint and Application for Injunctive Relief against Defendants, **UNITED ASSOCIATION OF JOURNEYMAN AND APPRENTICES OF THE PLUMPING AND PIPEFITTING INDUSTRY OF THE UNITED STATES OF AMERICA AFL-CIO LOCAL 198 HEALTH AND WELFARE FUND, LOCAL 198 HEALTH AND WELFARE FUND BOARD OF TRUSTEES, LOUIS L. ROBEIN III, MARIA C. CANGEMI, and ROBEIN, URANN, SPENCER, PICARD & CANGEMI, APLC**, hereby states as follows:

## JURISDICTION AND VENUE

1. This is a civil complaint brought pursuant to ERISA, 29 U.S.C. §§ 1109 and 1132, Louisiana State law, federal common law regarding breach of the terms of an employee benefits plan for the purpose of compelling Defendant to reinstate the Health Reimbursement Accounts promised, and for an accounting, recovery of damages, costs, and attorney fees incurred as a consequence of Defendant's failure to do so.

2

2. This Court has jurisdiction pursuant to the following statutes:

   a. ERISA §§ 502 (e)(1), (f), 29 U.S.C. § 1132 (e)(1), (f), and 28 U.S.C. §2201.

   b. 28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over state law claims.

3. Venue is proper in this Court pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). The Defendant Plan is administered in Baton Rouge, Louisiana.

4. Upon information and belief, the Class, as defined herein, has in excess of one hundred members (100), and the amount in controversy, in the aggregate, exceeds $4 million.

5. To the extent feasible, Plaintiffs exhausted all administrative remedies in accordance with the Plan's terms. The Notice of Material Modification mailed to some, but not all, former Local 106 members did not include any language discussing an appeal procedure for the termination of such accounts. Ultimately, Plaintiff Poe contacted Business Manager of Local 198, Neil Miller, on several occasions, and was instructed to file an Appeal to the Board of Trustees. Acting upon Miller's instructions, Plaintiff filed multiple written appeals with the Board of Trustees. Acting upon the instruction provided verbally by Miller, undersigned counsel sent an additional, formal demand/ "appeal" on behalf of all Plaintiffs. *See* Exhibit A.

{*Remainder of Page Intentionally Left Blank*}

## PARTIES

6. Plaintiff, MICHAEL D. POE, is a participant, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in a welfare benefit plan (hereinafter the "Plan") by virtue of the merger that occurred between Local 106 and Local 198 in July 2015. Plaintiff resides in the city of Lake Charles, Parish of Calcasieu, State of Louisiana. At all times relevant to the instant matter, Plaintiff was a Medicare Eligible HRA Participant.

7. Plaintiff, RICKY R. HUGGINS, is a participant, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in a welfare benefit plan (hereinafter the "Plan") by virtue of the merger that occurred between Local 106 and Local 198 in July 2015. Plaintiff resides in the city of Lake Charles, Parish of Calcasieu, State of Louisiana. Plaintiff is currently not in good standing with Local 198 due to nonpayment of dues.

8. Plaintiff, PATRICK SCHEXNIDER, is a participant, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in a welfare benefit plan (hereinafter the "Plan") by virtue of the merger that occurred between Local 106 and Local 198 in July 2015. Plaintiff resides in the city of Iowa, Parish of Calcasieu, State of Louisiana. Plaintiff is currently in good standing and is an Active HRA Participant.

9. Defendant, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada AFL-CIO, Local 198 (hereinafter "Local 198") is a juridical person created and existing within the State

4

of Louisiana, with its principal corporate office in the City of Baton Rouge.

10. Defendant Local 198 is also the sponsoring employer and the administrator of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada AFL-CIO, Local 198 Health and Welfare Trust Fund (hereinafter the "Local 198 Health and Welfare Fund") The Defendant Plan (hereinafter "UA Local 198 Plan") is a welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

11. Defendant, Local 198 Health and Welfare Fund Board of Trustees (hereinafter "the Board") is a fiduciary and administrator within the meaning of ERISA §§ 3(16), 402(a)(2), 29 U.S.C. § 1002(16), 1102(a)(2), with respect to the UA Local 198 Plan.

12. Defendant, Louis L. Robein, III, is an individual of the full age of majority who resides in the State of Louisiana. At all times relevant to this action, he served as counsel for Local 198.

13. Defendant, Maria C. Cangemi, is an individual of the full age of majority who resides in the State of Louisiana. At all times relevant to this action, she served as counsel for the former Local 106.

14. Defendant, Robein, Urann, Spencer, Picard & Cangemi, APLC, is a professional limited liability company with its principal place of business in Metairie, Louisiana. At all times relevant to this suit, Defendant Louis L. Robein and Maria C. Cangemi served as partnering attorneys at Robein, Urann, Spencer, Picard & Cangemi, APLC.

## OVERVIEW

15. This is a Class Action Complaint brought to obtain injunctive, equitable, and monetary relief on behalf of a class of individual employees, acting in their individual capacities and on behalf of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States of America AFL-CIO Local 198 Health and Welfare Plan, whose HRAs Defendant has wrongfully terminated and thus withheld benefits due to them via previous employment engagements. Plaintiffs allege violations of ERISA, 29 U.S.C§§ 1001 *et seq*., and Louisiana contract law.

16. This action arises against the UA Local 198 Health and Welfare Fund and the Local 198 Health and Welfare Fund Board of Trustees by members of the former Local Union 106 – suing on behalf of themselves, all other individuals similarly situated, and on behalf of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States of America AFL-CIO Local 198 Health and Welfare Plan – to compel the Board of the Local 198 Health and Welfare Fund to turn over and pay to the former Local 106 members the monies in the Plaintiff employees' Health Reimbursement Accounts (HRAs), which were maintained and wrongfully withheld by the Local 198 Health and Welfare Fund.

17. The monies subject of the instant suit were previously contributed to the Local 106 Health and Welfare Fund on behalf of former Local 106 employees when those employees participated in the Local 106 Health and Welfare Fund.

18. The former Local 106 members were previously represented by Local 106 and maintained individual HRA accounts within the Local 106 Health and Welfare Fund, a trust fund established in Louisiana to provide ancillary benefits to numerous Local 106 employees.

19. Upon information and belief, as part of the compensation provided to employees, various contracts made monetary contributions to the Local 106 Health and Welfare Fund on behalf of each employee during the time period Local 106 was their collective bargaining representative.

20. All employer contributions to the Local 106 Health and Welfare fund were deposited into individual employee HRA accounts for the purposes of individual employees paying medical expenses in retirement.

21. Local 106 was forced to merge into Local 198 in 2014; however, the Health and Welfare Funds of the Local 106 and Local 198 remained separate entities.

22. Upon the eventual agreement to merge the Local 106 Health and Welfare Fund with the Local 198 Health and Welfare Fund, the Local 106 Health and Welfare Fund ceased to exist.

23. After several discussions, Local 106 Trustees evinced clear intent to accept the merger proposal *only* upon the express understanding that the Health Reimbursement Accounts previously established for Local 106 members would be carried over to the Local 198 Health and Welfare Fund. Local 198, through its agents, officers, and employees, assured Local 106 Trustees that the HRA accounts would be transferred over accordingly. Upon this express understanding, Local 106 Trustees agreed to merge the Health and Welfare Funds, made effective July 1, 2015.

24. On July 18, 2017, Local 198 sent a Summary of Material Modifications letters to all active

and Medicare eligible HRA participants, informing them of the Board's decision to eliminate HRAs effective claims incurred after September 30, 2017 and for any claims submitted for reimbursement after December 31, 2017. *See* Exhibit B.

25. Upon expulsion from the 106 Health and Welfare Fund and forced entry into the Local 198 Health and Welfare Fund (the "Fund"), the Fund notified the former 106 members that they would be forfeiting all the monies in their individual HRA accounts over to the Local 198 Fund, and that the monies from these individual accounts would not be available for the Plaintiff employees to use for defrayal of medical expenses in retirement. Local 198 has wrongfully retained all of the contributions in the Plaintiffs' individual accounts, even though such contributions had been made part of the Plaintiff employees' annual compensation.

---

## CLASS ACTION ALLEGATIONS

_____

26. Plaintiffs bring this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the "Louisiana Class" as defined as follows:

> All individuals who, through a contract with Defendant or otherwise, performed, at any time, work through Local 106, who had accumulated funds in his or her respective HRA account by virtue of his or her membership in Local 106, and whose HRA balance was terminated following the 198 Board of Trustee's July 6, 2017 decision to terminate HRA accounts (collectively "Covered Personnel") anywhere at any time in the United States within the two (2) months preceding the commencement of the applicable prescriptive period under ERISA through the close of the Court-determined opt-out period.

Plaintiffs are included in the Class and reserve the right to redefine the Class prior to class certification.

27. Numerosity: Members of the Class are so numerous that their individual joinder is impracticable. At this time, undersigned counsel is aware that there are over one hundred (100) former Local 106 members, several, if not all of which had HRA accounts upon the merger with Local 198. The precise number of Class members is unknown to Plaintiffs; however, upon information and belief, it is in excess of one hundred (100) individuals. The true number of Class members is, however, likely to be known by Defendant, and thus, Class members may be notified of the pendency of this action by first class mail, electronic, and published notice.

28. Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class. Those questions predominate over any questions that may affect individual Class members, and include the following:

   a. Whether Defendant has violated the rights of Plaintiffs and members of the class under ERISA by wrongfully terminating and therefore denying Plaintiffs of the benefits due to them pursuant to 29 U.S.C. § 1132(a)(1)(B);

   b. Whether Defendant has violated the rights of Plaintiffs and members of the Class, acting on behalf of United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States of America AFL-CIO Local 198 Health and Welfare Plan, under ERISA by intentionally breaching their fiduciary duties and acting to deprive numerous plan participants of the benefits promised to them pursuant to 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109;

   c. Whether Defendant has violated the rights of Plaintiffs and members of the Class under ERISA by violating any provision of ERISA that is appropriately remedied by injunctive or equitable relief;

d.  Whether Defendants fraudulently induced Plaintiffs into merging the Local 106 Health and Welfare Fund with the Local 198 Fund after failing to disclose a Conflict of Interest between the parties'

e.  Whether the Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Class.

29. Typicality: Plaintiffs' claims are typical of the other members of the Class. Plaintiffs had several thousand dollars accumulated in their respective HRA accounts, which was taken from them and placed into the 198 General Health and Welfare Fund, usable by all participants in the Local 198 Fund. Plaintiffs had the same duties and responsibilities as other Class members. Further, they were subject to the same policies and practices and the same or substantially similar conditions of employment.

30. Adequacy: The named Plaintiffs will adequately represent the interests of the Class. They have been treated in the same manner as other Class Members by Defendant and have been damaged by this treatment in the same manner as other Class Members by their loss of their previously earned HRA balances. Plaintiffs are committed to vigorously prosecuting this action. Plaintiffs have retained an attorney who is well qualified to handle lawsuits of this type. Plaintiffs have no interests adverse to those of the class.

31. Predominance: This case should be certified as a class action because the common questions of law and fact concerning Defendant's liability predominate over any individual questions, including the days worked, the relative dates of termination, and the resulting amount of damages incurred by each employee.

32. Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims alleged in the instant Complaint. The expense and burden of

individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship for the litigants and the Court and would create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

## FACTS COMMON TO ALL COUNTS

1.  Plaintiffs Poe, Huggins, Schexnider, and all other individuals similarly situated worked as employees for the Plumbers and Steamfitters Local No. 106 (hereinafter "Local 106), located in Lake Charles, State of Louisiana.

2. At all relevant times, Local 106 maintained the Local 106 Health and Welfare Fund, a trust fund established in Louisiana for the specific purpose of providing ancillary benefits to its numerous Local 106 members.

3. Under the terms of the Local 106 Health and Welfare Fund, Local 106 members were provided Health Reimbursement Accounts. As part of compensation provided to Local 106 employees, various contractors made monetary contributions to the HRA accounts on behalf of each employee during the time period Local 106 was in existence.

4. All employer – contractor – contributions were deposited into individual employee HRA accounts for the purposes of individual employees paying medical expenses in retirement.

5. Three (3) separate mergers between Local 106 and Local 198 took place, as set forth in

11

detail in the following paragraphs:

6. In January 2014, the members of Local 106 merged with the members of Local 198; however, their respective pension funds health and welfare funds remained separate. Notably, the only reason Local 106 members agreed to merge with Local 198 members is because Lance Albin, the UA international representative, threatened to have the UA redraw the property lines and deprive Local 106 of any jurisdiction to work if Local 106 members did not agree to the merger. The Local 106 members either had to agree to merger with Local 198 members or lose the ability to work.

7. Upon information and belief, the respective pension funds of Local 106 and Local 198 merged per an agreement made effective on September 1, 2014. This merger was relatively uneventful and no facts surrounding the merger of the pension funds gives rise to this action.

8. At the Board meeting that occurred on November 13, 2014, Mr. Gandy presented and reviewed a merger study prepared by Segal Consulting relating to a merger of the Local 106 and Local 198 Health and Welfare Funds. He reviewed the financial information of both funds in which he presented a comparison of the total estimated unallocated assets as of the fiscal year. He stated the estimated unallocated assets as of September 1, 2014 for the Local 198 Fund was a deficit of $330,762.00, and the estimated unallocated net assets as of July 1, 2014 for the Local 106 fund was $4,536,316.00. *See* Exhibit C, p.2.

9. At the Board meeting that occurred on December 17, 2014, the 106 Trustees entered into discussion relating to the Health & Welfare Fund merger between the UA Local 198 and Local 106 Funds.

10. Neil Miller, Business Manager for Local 198, addressed concerns that were voiced by the

106 Trustees regarding the current deficit of the Local 198 plan.

11. At the December 17, 2014 meeting, Neil Miller advised the 106 Trustees that "it is the intent of the Board of Trustees of Local 198 to allow the Lake Charles participants to maintain their health reimbursement accounts when the plans merge." *See* Exhibit D, p.2.

12. At the February 12, 2015 board meeting, the Trustees discussed at length the benefits outlined in the proposed merger offer, prompted by one Trustee stating that his main issue was the distribution of the remaining assets of the current Local 106 plan into the Local 198 Health and Welfare Fund. *See* Exhibit E, p.3.

13. The discussion was continued at the Board's special meeting, which took place on March 11, 2015. Notably, it was a consensus of the Trustees to issue a counter proposal on the merger with the intent to insure the Local 106 participants were in the same or better position after the merger as they were pre-merger. John Gandy, Fund Consultant of Segal Consulting, advised the Trustees that the Local 198 merger proposal did not accomplish this as presented. *See* Exhibit F.

14. Also during the March 11, 2015 meeting, Maria C. Cangemi presented a revised amendment to a section of the Local 106 Health and Welfare Fund Trust agreement, which contained provisions to allow the Trustees the right to terminate the Trust or provide for a merger of the Plan with another qualified Health and Welfare Fund. *See* Exhibit F.

15. During the Board meeting that occurred on April 28, 2015, Mr. Campbell noted that the assets of the Local 106 plan would not help the Local 198 plan, but would only "prolong the inevitable." *See* Exhibit G. Mr. Cole noted that a vote to accept the terms of the merger presented on April 28, 2015 would eliminate the possibility of giving any allocation to

the plan participants into their health reimbursement accounts and further noted that he was of the opinion that the liability they were buying into as a contractor would be astronomical. *Id.* Further, Mr. Richard discussed that, based on the financial condition of the Local 198 Fund, a merger into the plan would not be fulfilling his fiduciary responsibility. In response, the motion to accept the terms of the merger failed. *Id.*

16. At the April 28, board meeting, the Trustees voted to allocate $5.00 per hour effective immediately to the plan participant's existing Health Reimbursement Accounts on behalf of the Plan's active plan participants based on the hours they worked during the plan year June 1, 2013 through June 30, 2014. *See* Exhibit E. Based on this clarification, the Trustees accepted the merger based on the proposal offered by the Local 198 Health and Welfare Board of Trustees dated February 11, 2015 as clarified by the Responses to Condition for Merger. *Id.*

17. At the time of the potential merger of the Local 106 and Local 198 Health and Welfare Funds, Local 106 had over $10 million in reserves. Local 198 wanted the full $10 million to be transferred directly to its Health and Welfare Fund; however, a majority of those present during the negotiations voted that $5 million of the reserves would be transferred directly to Local 198's Health and Welfare Fund, and the remaining $5 million would be paid out to Local 106 members. The Local 106 Trustees thereafter used the HRAs as a way to house the $5 million being retained by Local 106. Each Local 106 member received $5.00 for every hour worked during 2014, and that amount was placed in his respective HRA account.

18. The "Agreement to Merge" was entered into to be effective as of the 30th day of June 2015 by and between the Trustees of the Local 106 and Local 198 Health and Welfare

Funds. *See* Exhibit H. Paragraph 18 of the Agreement states, "All active Local 106 Welfare Fund participants with HRA account balances will retain and carry over to the Local 198 Welfare Fund the account balances they have in their HRAs at the time of the merger, and shall be permitted to utilize their HRA balances in accordance with the current rules in existence under Local 106 Welfare Fund as of the date of the merger." *Id.*

19. The eventual merger between the Local 106 and Local 198 Health and Welfare Funds occurred as the result of two consecutive meetings between representatives of trustees of both Local 106 and Local 198. Notably, both Local 106 *and* Local 198 were represented by partners of the firm Robein, Urann, Spencer, Picard, & Cangemi. Louis L. Robein, III represented Local 198 and Maria C. Cangemi represented Local 106 during this merger; however, Local 106 did not execute any waiver of the conflict of interest arising by having parties to a merger being represented by partners of the same law firm.

20. Central to the merger agreement was the notion that Local 106 members would be able to keep and to fully utilize the account balances accrued in their respective HRA accounts. Local 106 representatives were repeatedly assured by representatives of Local 198 that, upon merger with Local 198, Local 106 members' HRA accounts would remain intact indefinitely so that the former Local 106 members could utilize the funds they had earned.

21. Solely on reliance of the promises by Local 198 to maintain Local 106 employees' HRA accounts, representatives of Local 106 agreed to the merger of the 198 and 106 Health and Welfare Funds.

22. At the time of the merger, Local 198 had not established HRA accounts for its preexisting members. Therefore, the new Summary Plan Document for the UA Local 198 Plan, which now governed preexisting Local 198 members and former Local 106 members, provided

specifically that the former Local 106 members' HRA account balances were to be carried over to the UA Local 198 Plan. *See* Exhibit G. Notably, the attorneys who drafted the Plan, the firm who represented both parties to the merger, included language: "Amendment and Termination. The HRA has been established with the intent of being maintained for an indefinite period. *Nonetheless, the Board of Trustees reserves the right to amend or terminate all or any part of the HRA at any time for any reason*" without informing members of Local 106.

23. The HRA balances from the Local 106 Health and Welfare Fund were subsequently transferred to the UA Local 198 Health and Welfare Fund on July 1, 2015. At all relevant times, all Plan assets have been held in a trust fund established and administered by the Board.

24. On July 18, 2017, Local 198 sent a Summary of Material Modifications letter to all active and Medicare eligible HRA participants, informing them of the Board's July 6, 2017 decision to eliminate HRAs effective for claims incurred after September 30, 2017 and for any claims submitted for reimbursement after December 31, 2017. *See* Exhibit B.

25. At the July, 6 2017 Board Meeting, Billy Foreman, the member specifically designated and given a position on the Board to represent the interests of former Local 106 members, was absent. Therefore, the Board of Trustees voted that terminating the HRAs – assets that only affect former Local 106 members – was in "the best interest of the Plan" without the presence of any member or Trustee who would adequately represent those actually affected by the amendment. *See* Exhibit I.

26. Upon the termination of the HRA accounts, Local 198 notified the former 106 members that they would be forfeiting all the monies in their individual HRA accounts over to the

16

Local 198 Health and Welfare Fund, and that the monies from these individual accounts would not be available for the Plaintiff employees to use for defrayal of medical expenses in retirement. This effectively takes the $5 million expressly reserved to the Local 106 members from the merger and places it in the hands of the Local 198 Health and Welfare Fund, which expressly was avoided during merger negotiations.

27. Local 198, through termination of the HRA accounts, has retained all of the contributions in the Plaintiff employee's individual accounts, even though such contributions had been made part of the Plaintiff employees' annual compensation.

28. The monies in these accounts must be returned to their rightful owners – the former Local 106 and now-UA Local 198 Plan participants – so that they may be put to use to pay for medical expenses in retirement; former Local 106 members have an equitable interest in having that money be available to them for its intended use.

---

## COUNT I: Denial of Benefits under ERISA
*Pursuant to 29 U.S.C. § 1132(a)(1)(B)*

---

29. Plaintiffs repeat and reallege all prior paragraphs as if set forth herein.

30. A participant or beneficiary may bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).

31. Plaintiffs are "participants" and/or "beneficiaries" for ERISA purposes. 29 U.S.C. § 1002(7). Plaintiffs are former members of an employee organization (Local 106 Health and Welfare Fund) who may be eligible for benefits from an employment benefit plan (Local 198 Fund) which covers members of that organization.

32. Plaintiffs have raised a colorable claim that they are be eligible for continuing HRA benefits from the Defendant Plan.

33. As a result of Defendants' wrongful denial of benefits lawfully owed to Plaintiffs under the Plan, Plaintiffs suffered damages, including without limitation all past and future loss of benefits to which they are entitled under the Plan, consequential and incidental damages and attorney's fees, to the extent such damages are permitted by law.

---

**COUNT II: Breach of Fiduciary Duties**
*Pursuant to 29 U.S.C. §§ 1132(a)(2); 1109*

---

34. Plaintiffs repeat and reallege all prior paragraphs as if set forth herein.

35. The Board is the named fiduciary of the Local 198 Health and Welfare Fund.

36. A fiduciary relation existed and exists between the Defendant and the Plaintiff employees.

37. The Board has committed misconduct by retaining for preexisting members of Local 198, at the expense of approximately one hundred (100) former Local 106 Welfare Plan participants and now-Local 198 Health and Welfare Fund participants, monies earned exclusively by former Local 106 Welfare plan participants prior to the merger of the Local 106 and Local 198 Health and Welfare Funds. As specifically stated in the terms of the Plan, the HRA accounts were to be notional accounts to keep track of past contributions and available reimbursement amounts.

38. Defendants have committed misconduct by retaining for themselves the money in the Plaintiff employees' HRA accounts.

39. The Board has failed to act prudently by intentionally mismanaging and administering

18

HRA assets, which are assets of the Plan. In fact, the Board has terminated the HRA accounts to effectively usurp money from some Plan participants for the benefit of other Plan participants.

40. Defendant Trustees' refusal to pay Participant Plaintiffs their owed HRA benefits under the Plan, Defendant Trustees have breached their fiduciary duties with respect to at least two central ERISA fiduciary functions: their authority over the Plant's assets and the administration of the Plan. *See* 29 U.S.C. § 1002(21) (A).

41. Wherefore, Plaintiffs pray for an order:

   a. Partitioning the reserves of the Local 198 fund and transferring to the former-Local 106 members certain assets representing the value over time of contributions made on behalf of former-Local 106 members into the HRA accounts;

   b. Compelling the Local 198 Fund Board of Trustees to transfer to the former-Local 106 members the proportionate amount of monetary reserves deemed proper;

      i. Compensatory damages;

      ii. Restitution;

      iii. Punitive damages;

      iv. Interests;

      v. Costs of litigation;

      vi. Such other relief as the Court deems equitable and just.

_____

## COUNT III: Equitable Relief (Estoppel)
*Pursuant to 1132(a)(3)*

_____

42. Plaintiffs reallege and restate previous paragraphs as if set forth herein.

43. The conduct of Defendant, as Administrator of the Local 198 Welfare Plan, included:

   a.  Misrepresentations to Plaintiff and others similarly situated concerning his right to continued access to his Health Reimbursement Account, both orally and through documents issued by the Defendant in order to effectuate a merger;

   b.  Unilateral inclusion of the termination/amendment language in the Summary Plan Document now providing Defendant Trustees, who easily outnumber Trustees allowed to transfer from Local 106, unbridled discretion to terminate the HRA accounts of former Local 106 members for any reason whatsoever.

44. The actions cited above, and the statements made by Defendant were relied upon by Plaintiff in making the decision to return to Local 106; indeed, had Local 106 been told then that the HRA accounts would be terminated, Local 106 never would have agreed to merge its Health and Welfare Fund with the Local 198 Welfare Fund.

45. As a result of the egregious nature of the statements made and the actions taken by Defendant, upon which Plaintiff relied, Defendant should be estopped from denying to Plaintiff and others similarly situated his right to his Health Reimbursement Account benefits.

46. Estoppel is an issue when an employer promises a participant that it will not exercise a right that it has under the plan (e.g., to terminate the plan or to change valuation dates in a profit sharing plan) and then it does so. *Armistead v. Vernitron Corp.,* 944 F.2d 1287. The

participant's claim for benefits under section 502(a)(1)(B) would not rest on any modification to the terms of the plan. Therefore, this does not affect the terms of the plan, and is a classic equitable estoppel situation.

47. A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise or a third person and which does not induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.[1] Therefore, claims that involve only plan administration or that restrict the plan sponsor's or administrator's exercise of discretion would be labeled as equitable estoppel.

---

## COUNT IV: Equitable Relief
### (Constructive Trust/Equitable Lien)
*Pursuant to 1132(a)(3)*

---

48. Plaintiffs reassert and reallege the previous paragraphs as if set forth fully herein.

49. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiffs are entitled to equitable relief to enforce the terms of the Plan and/or to redress a violation of the Plan.

50. Plaintiffs have an equitable lien and are entitled to the imposition of a constructive trust on the amount, to be determined upon a proper accounting, transferred from the HRA balances to the Local 198 Health and Welfare fund as a result of the Board of Trustee's decision to terminate the HRA balances.

---

[1] The brief overview in 9 W.S. Holdsworth. *A History of English Law* at 144*ff*, gives an insight into the twisty evolution of this doctrine. Black's Law Dictionary at 629-31 lists 19 forms of estoppel, some of which overlap and many of which go by more than one name.

51. The money identified as belonging in good conscience to Plaintiffs is now clearly traced to particular funds of the 198 Health and Welfare Fund.

52. Defendant Fund is in possession and/or control of certain Plan assets which belong to the Plan

53. There is a risk that Defendants will deplete and/or dispose of the benefits without the intervention of this Honorable Court.

54. Plaintiffs are entitled to have a constructive trust imposed on the HRA benefits in possession and/or control of Defendants to preserve the monies for recovery by the proper participants and/or beneficiaries in accordance with ERISA.

---

## COUNT V: Equitable Restitution
*Pursuant to 1132(a)(3)*

---

55. Plaintiffs reassert and reallege the previous paragraphs as if set forth fully herein.

56. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiffs are entitled to equitable relief to enforce the terms of the Plan and/or to redress a violation of the Plan.

57. Plaintiffs plead a cause of action for equitable restitution in those situations, if any, where a constructive trust may not be imposed.

58. Wherefore, Plaintiffs seek equitable restitution of – including the imposition of an equitable lien against – any overpaid benefits in the possession of Defendant at the time of the filing of this lawsuit which may not be protected through the imposition of a constructive trust.

## COUNT VI: Injunctive Relief
*Pursuant to 29 U.S.C. § 1132(a)(3)*

59. Plaintiffs reassert and reallege the previous paragraphs as if set forth fully herein.

60. Plaintiffs' claims for equitable lien/equitable restitution and a constructive trust with respect to the wrongfully terminated HRA benefits hinge upon those funds remaining in Defendants' possession and/or control. If Defendants are permitted to dissipate the overpaid benefits, then their actions will deprive the Plaintiffs – and the Plan as a whole as it relates to non-Defendant participants and beneficiaries – of any equitable remedy under ERISA, thereby constituting irreparable harm

61. 29 U.S.C. 1132(a)(3) specifically allows Plan participants to seek to enjoin any act or practice which violates ERISA or the terms of the Plan. Consequently, Plaintiffs request that the Court enter a preliminary and permanent injunction prohibiting Defendants from dissipating or transferring possession and/or control of those monies derived from the termination of Plaintiffs' HRA accounts until such time as this Honorable Court enters a final judgment in this matter.

62. Plaintiffs' request for preliminary and final injunctive relief will preserve the Court's ability to impose final equitable relief in the form of an equitable lien/restitution and a constructive trust, and promotes the public interest of discouraging individuals and entities from violating the intent of ERISA and the qualified plans in which they participate. Such injunctive relief preserves the status quo until the merits of the controversy can be fully and fairly adjudicated.

## COUNT VII: Legal Malpractice by Fraud
*Pursuant to Louisiana R.S. § 9:5605(E)*

63. Plaintiffs restate and reallege all previous paragraphs as if set forth herein.

64. Consistently throughout the respective merger agreements, Maria C. Cangemi purported to represent the interests of Local 106 and its members.

65. At no time did Cangemi disclose her association with Louis L. Robein, III, the long-acting representative of Local 198 and its interests.

66. Both Robein and Cangemi serve as partners of Robein, Urann, Spencer, Picard & Cangemi, APLC, a law firm based in Metairie, Louisiana.

67. Consistently throughout the merger discussions between Local 106 and Local 198, two partners from the same law firm were representing parties with adverse interests, a practice expressly prohibited by Rule 1.7 of the Rules of Professional Conduct.[2]

68. Despite the apparent and continuing Conflict of Interest, neither Cangemi nor Robein disclosed said conflict to the Trustees of Local 106.

69. At no time did Cangemi or Robein resolve the Conflict of Interest problem by obtaining a knowing and intelligent waiver by the Local 106 Trustees. As such, Local 106 Trustees acted upon the advice of Cangemi when determining whether to merge its Health and Welfare Fund with that of Local 198.

70. It was not until Cangemi informed Barbara Chapman via telephone call that she was worried about the conflict of interest that the conflict was disclosed.

---

[2] Rules of Professional Conduct 1.7(b) provides, in pertinent part, that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests.

71. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. It may result from silence or inaction. La. C.C. art. 1953.

72. The attorney advising Local 106 pertaining to the merger of the Local 106 and Local 198 Health and Welfare Funds, Maria C. Cangemi, had and continues to have a continuing conflict of interest because she is a law partner of the attorney who has effectively represented Local 198 interests for several years, Louis L. Robein, III.

73. Cangemi's failure to inform Local 106 Trustees of her relation to opposing counsel amounted to an omission of material fact that would have altered Local 106 Trustee's reliance on her advice deeming the merger of the Health and Welfare funds to be in the best interest of Local 106.

74. Cangemi, knowing that the remainder of Local 106 had already merged with Local 198, knew that the surviving entity was Local 198, which had been serviced by her partner, Robein, for numerous years. Ultimately, the client she served was Local 198.

75. As a result of Cangemi's omission, Local 106 Trustees relied, to their detriment and to the detriment of the employees whose interests they represent, upon her advice and entered into the merger agreement, which contained language affording the 198 Board of Trustees unbridled authority to terminate HRA accounts only existing for the former Local 106 members.

---

**COUNT VII: Rescission of Contract due to Vice of Consent**
*Pursuant to Louisiana Civil Code Article 1945 et seq.*

---

76. Plaintiffs restate and reallege all previous paragraphs as if set forth herein.

77. A contract is null when the requirements for its formation have not been met. It is relatively null when it violates a rule intended for the protection of private parties. La. C.C. arts. 2029, 2031.

78. Consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948.

79. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. It may result from silence or inaction. La. C.C. art. 1953.

80. Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent. La. C.C. art. 1955.

81. The attorney advising Local 106 pertaining to the merger of the Local 106 and Local 198 Health and Welfare Funds, Maria C. Cangemi, had and continues to have a continuing conflict of interest because she is a law partner of the attorney who has effectively represented Local 198 interests for several years, Louis L. Robein, III.

82. Both Robein and Cangemi serve as partners of Robein, Urann, Spencer, Picard & Cangemi, APLC, a law firm based in Metairie, Louisiana.

83. Consistently throughout the merger discussions between Local 106 and Local 198, two partners from the same law firm were representing parties with adverse interests, a practice expressly prohibited by Rule 1.7 of the Rules of Professional Conduct.[3]

84. Despite the apparent and continuing Conflict of Interest, neither Cangemi nor Robein disclosed said conflict to the Trustees of Local 106.

---

[3] Rules of Professional Conduct 1.7(b) provides, in pertinent part, that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests.

85. At no time did Cangemi or Robein resolve the Conflict of Interest problem by obtaining a knowing and intelligent waiver by the Local 106 Trustees. As such, Local 106 Trustees acted upon the advice of Cangemi when determining whether to merge its Health and Welfare Fund with that of Local 198.

86. It was not until Cangemi informed Barbara Chapman via telephone call that she was worried about the conflict of interest that the conflict was disclosed.

87. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. It may result from silence or inaction. La. C.C. art. 1953.

88. The attorney advising Local 106 pertaining to the merger of the Local 106 and Local 198 Health and Welfare Funds, Maria C. Cangemi, had and continues to have a continuing conflict of interest because she is a law partner of the attorney who has effectively represented Local 198 interests for several years, Louis L. Robein, III.

89. Cangemi, knowing that the remainder of Local 106 had already merged with Local 198, knew that the surviving entity was Local 198, which had been serviced by her partner, Robein, for numerous years. Ultimately, the client she served was Local 198.

90. Cangemi's failure to inform Local 106 Trustees of her relation to opposing counsel amounted to an omission of material fact that would have altered Local 106 Trustee's reliance on her advice deeming the merger of the Health and Welfare funds to be in the best interest of Local 106.

91. As a result of Cangemi's omission, Local 106 Trustees relied, to their detriment and to the detriment of the employees whose interests they represent, upon her advice and entered into the merger agreement, which contained language affording the 198 Board of Trustees

unbridled authority to terminate HRA accounts only existing for the former Local 106 members.

---

## COUNT VIII: Breach of Contract

---

92. Plaintiffs repeat and reallege all prior paragraphs as if set forth herein.

93. When Local 106 was invited to discuss the merger of the Local 106 and Local 198 Health and Welfare Funds, agents and representatives of Local 198 repeatedly assured the members of Local 106 that the HRA accounts established for Local 106 members would be transferred and maintained indefinitely within the Local 198 Welfare Plan.

94. The written documentation issued by Local 198, and relied upon by Plaintiff, constituted to an obligation to provide that which had been promised, becoming party of Plaintiff's contract with his employer.

95. Defendant breached its contract with Plaintiff and others similarly situated when:

    a. Unilaterally including broad, ambiguous language that afforded the Local 198 Board of Trustees unbridled discretion to terminate the HRA accounts, maintained solely for the benefit of former Local 106 employees, at any time and for any reason and transfer said monies into the 198 General Health and Welfare Fund for the use of all 198 active members.

    b. Terminated the HRA accounts transferred for the benefit of former Local 106 employees pursuant to the merger of the Local 106 and Local 198 Health and Welfare Funds, transferring said monies in to the 198 General Health and Welfare

Fund for the use of all Local 198 active members.

96. As a direct and proximate result of the breaches set forth herein, Plaintiff and others similarly situated have been damaged in the form and to the extent set forth in Count I

97. As evidenced through conduct of the several board meetings pre-dating the July 1, 2015 merger of the Local 106 and Local 198 Health and Welfare Funds (signed July 23, 2015), the long-standing survival of the Local 106 HRA account balances was a material term of said agreement.

---

## COUNT IX: Attorney's Fees

---

98. Plaintiffs restate and reallege all previous paragraphs as if set forth herein.

99. Pursuant to the applicable provisions of ERISA and of Louisiana law, the Plaintiffs are entitled to the award of reasonable attorney's fees, to be determined upon conclusion of this matter.

---

## COUNT X: Punitive and Exemplary Damages

---

100.     Plaintiffs restate and reallege all previous paragraphs as if set forth herein.

101.     The acts and omissions on the part of The Board was committed with malice and were intentional in nature, justifying the imposition of punitive and exemplary damages against The Board and 198 Fund, jointly and severally, in an amount to be determined appropriate by this Honorable Court.

---

**PRAYER:**

---

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment against Defendants providing the following relief:

(a) An Order certifying the Louisiana Class, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel of record as Class Counsel;

(b) Rescission of the Agreement to Merge Local 106 and Local 198 Health and Welfare Funds

(c) Nonpayment of medical, wage, and all other benefits allowed under the Plan;

(d) Loss of past and future wages and other employment-related benefits;

(e) Health care and medical provider bills and expenses;

(f) Delay and/or denial of reasonable and necessary medical care;

(g) Past, present, and future mental anguish;

(h) Consequential damages;

(i) Incidental damages;

(j) Attorney's fees as provided by 29 U.S.C. § 1132 and by other applicable law;

(k) Punitive damages, to extent that such damages are permitted by law;

(l) Pre-judgment interest at the highest rate permitted by law;

(m) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(n) Costs, including expert fees;

(o) Injunctive relief; and

(p) Such other and further relief, at law or in equity, to which Plaintiffs may be entitled.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a trial by jury of the issues in this case, to the extent that a jury trial is permitted, and/or to preserve the issue for potential appellate review.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that Defendants be cited to appear and answer herein and upon final trial, Plaintiffs have judgment against Defendants for all relief requests, including without limitation all actual damages and equitable relief to be made whole as permitted by law, incidental and consequential damages, punitive damages, and attorney's fees as permitted by law, pre- and post- judgment interest at the maximum rate permitted by law, court costs, and for such other relief to which Plaintiffs may be justly entitled.

**RESPECTFULLY SUBMITTED**,

**SUDDUTH AND ASSOCIATES, LLC**
Attorneys at Law
1109 Pithon St.
Lake Charles, Louisiana 70601
Telephone:  (337) 480-0101
Fax:          (337) 419-0507

BY: *James C. Sudduth, III*
JAMES E. SUDDUTH, III (#35340)
KOURTNEY L. KECH (#37745)
*Counsel for Michael Poe, Ricky R. Huggins, Patrick Schexnider and all others similarly situated*