UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL D. POE ET AL.                                         CIVIL ACTION

VERSUS

UNITED ASSOCIATION OF                                         NO.: 18-0667-BAJ-EWD
JOURNEYMAN AND
APPRENTICES OF THE
PLUMBING AND PIPEFITTING
INDUSTRY OF THE UNITED
STATES OF AMERICA AFL-CIO
LOCAL 198 HEALTH AND
WELFARE FUND ET AL.

RULING AND ORDER

Before the Court is the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States of America AFL-CIO Local 198 Union Health and Welfare Fund[1] and the Local 198 Board of Trustees' (collectively, "Defendants") **Motion to Dismiss Plaintiffs' Complaint Pursuant to FRCP 12(b)(6). (Doc. 19).** Oral argument is not necessary. For the reasons stated below, the court **GRANTS** in part and **DENIES** in part Defendants' motion.

I.  BACKGROUND

Plaintiffs worked as employees for the Plumbers and Steamfitters Local No. 106 ("Local 106"), a union located in Lake Charles, Louisiana. (Doc. 1 at p. 11). Local 106 maintained the Local 106 Health and Welfare Fund ("106 Fund"), a trust fund

---

[1] Hereinafter "Local 198."

1

established in Louisiana for the specific purpose of providing ancillary benefits to its numerous Local 106 members. (*Id.*) Under the terms of the 106 Fund, Local 106 members were provided Health Reimbursement Accounts ("HRAs"). (*Id.*) As part of Local 106 employees' compensation, contractors made monetary contributions to the HRAs on behalf of each employee while Local 106 was in existence. (*Id.*) All employer/contractor contributions were deposited into individual employee HRAs for the purpose of paying the medical expenses of individual employees in retirement. (*Id.*)

In January of 2014, Local 106 merged with Plumbers and Steamfitters Local No. Local 198 ("Local 198"), which also had a Health and Welfare Fund ("Local 198 Fund"). (Doc. 1 at p. 12). The health and welfare funds of both entities remained separate. (*Id.*) However, in November of 2014, the entities began to consider merging the Local 106 and Local 198 Funds. A study prepared by a consulting firm revealed that the Local 198 Fund had a deficit of $330,762, while the Local 106 Fund had net assets totaling $4,536,316. At a board meeting in December of 2014, the business manager for Local 198 assured the Trustees of Local 106 that the Local 106 members would be able to maintain their health reimbursement accounts when the plans merged. (*Id.*) By 2015, the Local 106 Fund had grown to ten million dollars in assets. At that time, a majority of the trustees negotiating the merger voted that five million dollars would be paid out to Local 106 members, while the remaining funds would be transferred to the Local 198 Fund. The funds were distributed to Local 106 members through their HRAs.

Plaintiffs contend that at the time of the merger, Local 198 had not established HRAs for its preexisting members. (Doc. 1 at p. 15). The new Plan document for the new Local 198 Plan, which governed pre-existing Local 198 members and former Local 106 members, provided that Local 106 members' HRA account balances were to be carried over to the UA Local 198 Plan. However, Plaintiffs assert that the attorneys who drafted the Plan also included language indicating that the Board of Trustees of Local 198 reserved the "right to amend or terminate all or any part of the HRA at any time for any reason," despite earlier representations to Local 106 trustees. In July of 2017, the Local 198 Board of Trustees voted to terminate the HRAs for all Local 198 members. This decision only affected former Local 106 members, because Local 198 members who joined the union prior to the merger did not have HRA accounts.

## II. LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, a complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. Claims Based on 29 U.S.C. § 1132(a)(1)(b) (Count I)

Under 29 U.S.C. § 1132(a)(1)(B), a plaintiff may bring a civil action to (1) recover benefits due to him under the terms of an ERISA plan, (2) enforce his rights under the plan, (3) or clarify his rights to future benefits under the plan. Plaintiffs assert that they are eligible for continuing HRA benefits from the Local 198 Plan. (Doc. 1 at p. 18). Defendants argue that this claim must be dismissed because the plain language of the Plan documents indicates that Local 198 Trustees had the authority to terminate Plaintiffs' HRA benefits at any time for any reason. (Doc. 19-1 at p. 7). In their opposition, Plaintiffs agree with this assertion and now seek to amend their complaint to remove or otherwise dismiss claims arising under 29 U.S.C. § 1132(a)(1)(B). Given that both parties agree on this issue, Plaintiffs' claims under 29 U.S.C. § 1132(a)(1)(B), as alleged in Count I of the complaint, are dismissed.

### B. Claims Based on 29 U.S.C. § 1132(a)(2) (Count II)

Defendants seek dismissal of Plaintiffs' claim under § 1132(a)(2), which provides that "[a] civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Section 1109 provides:

4

> **(a)** Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.
>
> **(b)** No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

Plaintiffs allege that Defendants breached their fiduciary duties by retaining money earned exclusively by former Local 106 members for workers who were Local 106 members prior to the merger of the two unions. (Doc. 1 at p. 18). Defendants assert that this claim must be dismissed because § 1132(a)(2) only addresses breaches of fiduciary duties that harm the Plan as a whole. (Doc. 19-1 at p. 17). Defendants claim that not only are Plaintiffs' claims not made on behalf of the Plan, but also, on the contrary, that the claims intended to remove funds from the Plan and to deposit them into individual member accounts, to the detriment of the Plan. (*Id.*).

Plaintiffs argue that Defendants stole assets from some participants of the Plan and gave them to other participants of the same Plan. (Doc. 21 at pp. 27-28). Plaintiffs further allege that this act alone harms the entire Plan because it establishes that Defendants have disregarded their fiduciary duties to all beneficiaries of the Plan by favoring some over others, and causing beneficiaries to be concerned that other benefits may be targeted next. In light of the low pleading standard required to survive a motion to dismiss, the court finds that Plaintiffs have pleaded a plausible claim that Defendants' actions adversely affected the Plan.

### C. Claims based on 29 U.S.C. § 1132(a)(3) (Counts III, IV, and V)

Plaintiffs also bring claims under 29 U.S.C. § 1132(a)(3), which allows a plan beneficiary to bring an action under the theory of equitable estoppel. (Count III). To bring an equitable estoppel claim under 29 U.S.C. § 1132(a)(3), Plaintiffs must establish that Local 198 Defendants breached their fiduciary duties by demonstrating (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances. *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-445 (5th Cir. 2005).

Plaintiffs also request the creation of a constructive trust (Count IV) and equitable restitution (Count V).

#### 1.    **Equitable Estoppel**

##### *a. Material Misrepresentation*

First, Defendants argue that Plaintiffs have failed to allege that the Local 198 Defendants made any misrepresentations to Plaintiffs regarding the Plan. The Court disagrees. As Plaintiffs point out, they have made several allegations that would amount to misrepresentation. Plaintiffs allege that Neil Miller, Business manager for Local 198, advised Local 106 Trustees that Local 198 intended to allow former Local 106 members to keep their HRAs after the merger of the Local 106 and Local 198 Funds. (Doc. 1 at ¶ 13). Plaintiffs allege that the two funds negotiated an agreement whereby half of Local 106's $10 million would be transferred directly to Local 198 after the merger, but the remaining $5 million would be placed in the HRS accounts of Local 106 members. (*Id.* at ¶ 17). Plaintiffs allege that Local 106 representatives were repeatedly assured by Local 198 representatives that they would be permitted

to keep their HRA accounts. (*Id.* at ¶ 20). Plaintiffs also allege that despite this assurance, Defendants negotiated a Plan agreement whereby the Board of Trustees had absolute discretion to terminate the Local 106 HRA accounts. (*Id.* at ¶ 22). Finally, Plaintiffs allege that after Local 198 depleted the $5 million it received, it terminated the former Local 106 employees' HRA accounts and transferred the assets to Local 198's general welfare fund. (*Id.* at ¶ 26). Accordingly, the Court concludes that Plaintiffs have sufficiently alleged a misrepresentation.

Moreover, Plaintiffs do not assert that Defendants' oral representations should modify the terms of the Plan. Rather, Plaintiffs assert that Defendants made a material misrepresentation before the Plan was formed. Subsequently, the terms of the new negotiated Plan did not reflect the actual terms to which the parties previously agreed.

Finally, Defendants contend that Plaintiffs fail to allege that Defendants made any kind of statements to Plaintiffs personally. Instead, Defendants argue, Plaintiffs allege that Defendants made statements to the Local 106 Trustees, who are not Plaintiffs in this action. Defendants have not cited, and the Court has not found, any law indicating that Plaintiffs must allege that Defendants specifically made a material misrepresentation to them personally to create a cause of action. Ostensibly, the Local 106 Trustees represented Plaintiffs, the Plan beneficiaries, throughout negotiations. Plaintiffs allege that the Local 106 trustees, in their capacity as Plaintiffs' representatives, agreed to move forward with merging the Local 106 and 198 Funds based on the material misrepresentations made by Defendants. Thus,

7

Plaintiffs have pleaded facts sufficient to support the first prong of the equitable estoppel test.

### b. *Reasonable Reliance*

Second, Defendants argue that Plaintiffs have failed to allege that their reliance on oral representations that contradict the unambiguous terms of the Plan was not reasonable. Defendants assert that the United States Court of Appeals for the Fifth Circuit has held that it is unreasonable to rely on a representation regarding the terms of a plan where such a representation contradicts the unambiguous terms of the plan. *See Mello,* 431 F.3d at 445-446 (holding that an employee did not reasonably rely on oral representations and informal benefits statements which contradicted the clear and unambiguous terms of an ERISA plan). Defendants further argue that ERISA does not permit oral modification of unambiguous Plan terms.

Defendants also argue that amending a welfare benefit plan is not a fiduciary function, and therefore cannot lead to a breach of fiduciary duties. (Doc. 19 at p. 16). Defendants further argue that the Supreme Court has made clear that an entity does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan. *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78 (1995). Defendants' decision to include the termination language in the new Plan alone is not sufficient to state a claim for breach of a fiduciary duty, or a claim for equitable estoppel. However, Plaintiffs claim that they reasonably relied on oral promises that were ultimately broken by the termination language later added to the Plan. Thus, Plaintiffs have pleaded facts sufficient to support the second prong of the equitable estoppel test.

### c. *Extraordinary Circumstances*

Simply failing to live up to written or oral assurances does not constitute the requisite extraordinary circumstances. *High v. E–Systems Inc.*, 459 F.3d 573, 580 (5th Cir. 2006) (holding that written and oral assurances that plaintiff would receive more favorable benefit terms than he actually received did not constitute "extraordinary circumstances."). Plaintiffs here allege little more than this. Plaintiffs have not directly addressed what, if any, factors make the circumstances surrounding this matter "extraordinary." In light of clear precedent defining "extraordinary" and Plaintiffs' lack of argument on this point, Plaintiffs have failed to plead facts sufficient to support the third prong of the equitable estoppel test. Accordingly, Count III of Plaintiffs' Complaint is dismissed.

### 2. **Constructive Trusts (Count IV)**

The purpose of a constructive trust "is to impose an equitable lien on property because of a fiduciary relationship between the parties." *Schwegmann v. Schwegmann*, 441 So.2d 316, 323 (5th Cir. 1983). However, the Fifth Circuit has also found that "it is clear that constructive trusts are not recognized under Louisiana law." *Id.* Therefore, Count IV of Plaintiffs' claim for the creation of a constructive trust is dismissed.

### 3. **Equitable Restitution (Count V)**

Plaintiffs request that the Court craft an equitable remedy in this matter and order the creation of a constructive trust and an equitable lien on any overpaid

9

benefits in Defendants' possession at the time this suit was filed. To secure an equitable lien, a claimant must establish:

> (1) that there exists an express or implied agreement between the parties demonstrating a clear intent to create a security interest in order to secure an obligation between them; (2) that the parties intended specific property to secure the payment; (3) and that there is no adequate remedy at law. *In re RONFIN Series C Bonds Sec. Interest Litig.*, 182 F.3d 366, 371 (5th Cir. 1999).

The Court finds that Plaintiffs have alleged sufficient facts to satisfy the first element. Plaintiffs alleged that pursuant to certain oral assurances, they continued to pay into the Plan with the understanding that their benefits from the Plan would not be diminished. It was alleged that such promises were made to secure the payment. However, over the course of this action, Plaintiffs have suggested other potential remedies, including the assessment of punitive and exemplary damages. Because other adequate remedies at law exist, Count V of Plaintiffs' Complaint is dismissed.

Finally, Defendants argue that Plaintiffs' § 1132(a)(3) claim is duplicative of their § 1132(a)(1)(B) claim and is therefore barred under precedent set forth by the Fifth Circuit (Doc. 19-1 at p. 10), which holds that where a plaintiff can seek adequate relief under 29 U.S.C. § 1132(a)(1)(B), the relief under § 1132(a)(3) is normally unavailable. *Swenson v. United of Omaha Life Insurance Company*, 876 F.3d 809, 811-812 (5th Cir. 2017). The Court finds this argument to be moot, as it has previously concluded that Plaintiffs' § 1132(a)(3) claim is dismissed.

## D. Injunctive Relief (Count VI)

Plaintiffs request injunctive relief in this matter pursuant to 29 U.S.C. 1132(a)(3), which allows Plan participants to enjoin any act or practice that violates ERISA or the terms of the Plan. To be entitled to injunctive relief, Plaintiffs must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) that the injunction will not disserve the public interest. *See Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). *See also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors.")

Plaintiffs have not specifically alleged any of the requisite factors to support a request for injunctive relief. Therefore, Count VI of the complaint is dismissed without prejudice.

## E. State Law Claims (Counts VIIa, VIIb[2], and VIII)

Defendants contend that Plaintiffs' state law claims – rescission of the merger, breach of contract, and exemplary and punitive damages, are preempted by ERISA. (Doc. 19-1 at p. 18). A state-law cause of action is completely preempted if (1) the benefit plan at issue constitutes an ERISA plan, and (2) the state law claims relate to the plan. *Woods v. Texas Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006).

---

[2] Plaintiffs appear to have two entries titled "Count VII;" the Court will designate the first as VIIa and the second as VIIb.

### 1. *State Law Fraud and Rescission Claims*

Defendants seek to dismiss Plaintiffs' claims for legal malpractice by fraud and rescission of a contract due to vice of consent. However, the Complaint is clear that these claims are only asserted against Defendants Louis Robein, Maria Cangemi, and Robein, Urann, Spencer, Picard, & Cangemi, APLC. Accordingly, the Court finds it unnecessary to address this argument and concludes that Counts VIIa (Legal Malpractice by Fraud) and Count VIIb (Rescission of Contract Due to Vice of Consent) are inapplicable to Defendant in this matter.[3]

### 2. *State Law Breach of Contract Claims*

Defendants also seek to dismiss Plaintiffs' breach of contract claims. Plaintiffs assert that Defendants breached their contract with Plaintiffs when Defendants unilaterally included language in the Plan stating that the Board of Trustees had unbridled discretion to terminate the HRA accounts and when they proceeded to terminate said accounts. (Doc. 1 at p. 28). Plaintiffs assert that this constituted a breach of contract because prior to the creation of the plan, Defendants issued documentation indicating that the HRA accounts would not be terminated.

It is undisputed that the Plan at issue, which permits the Local 198 Board of Trustees to terminate the HRA accounts, is an ERISA plan. Thus, the Court must determine if the breach of contract claim relates to the Plan and is consequently preempted by ERISA. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09 (2004) (holding that the goal of ERISA is to create a uniform regulatory regime over

---

[3] Counts VI and VIIa are addressed in the Court's Ruling and Order at Doc. 18.

employee benefit plans, and that ERISA preempts any state law cause of action that duplicates, supplements, or supplants the remedies available under ERISA). The Fifth Circuit has instructed that a state law claim relates to a plan if (1) the state law claim addresses areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan and (2) the claim directly affects the relationship among the traditional ERISA entities, including i) the employer, the plan, and its fiduciaries, and ii) the participants and beneficiaries. *Woods*, 459 F.3d at 602. An analysis of these factors indicates that Plaintiffs' breach of contract claim is preempted. Plaintiffs' claim directly involves their right to receive benefits under the ERISA Plan. Although Plaintiffs claim that Defendants inserted the discretionary language without their permission, ultimately, the claim still involves benefits to which they are entitled under the Plan. Accordingly, Count VIII of Plaintiffs' Complaint is dismissed.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss (Doc. 18) is GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Counts I, III, IV, V, VIIa, VIIb and VIII of the Complaint are **DISMISSED.** Count VI is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Counts II, IX, and X remain viable.

Baton Rouge, Louisiana, this **30th** day of September, 2019.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**